# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BIG D INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-21-00211-F |
| vs. | ) | |
| | ) | Hon. Stephen P. Friot |
| FRESH PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## BIG D INDUSTRIES, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Patrick R. Pearce, Jr., OBA No. 18802
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, OK 73104
Telephone:   (405) 239-6040
Facsimile: (405) 239-6766
E-mail: pwhaley@ryanwhaley.com

-and-

Evan W. Talley, OBA No. 22923
**DUNLAP CODDING PC**
609 W. Sheridan Avenue
Oklahoma City, OK 73102
Telephone:   (405) 607-8600
E-mail: etalley@dunlapcodding.com

**ATTORNEYS FOR PLAINTIFF,
BIG D INDUSTRIES, INC.**

i

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 1

  I. THE '098 PATENT ............................................................................................ 1

    A. Brief Overview of the '098 Patent ............................................................... 1

    B. Prosecution History of the '098 Patent ....................................................... 3

ARGUMENT AND AUTHORITIES ......................................................................... 6

  I. LEGAL STANDARDS OF CLAIM CONSTRUCTION ..................................... 6

  II. DISPUTED CLAIM TERMS ........................................................................... 9

    A. "Urinal Screen" (Claims: 19–22, 25, 27–28, 33–35, 37–39, 41–45, 51–53) .......... 9

    B. "Urinal" (Claims: 22, 39) ........................................................................ 12

    C. "Plurality of Interconnected Cells" (Claims: 19, 20, 27, 28, 34) ........................ 13

    D. "Brace" (Claims: 19, 33, 37, 51, 52) ......................................................... 16

    E. "Corner" (Claims: 19, 33, 37, 51, 52) ........................................................ 18

    F. "Perimeter" (Claims: 38, 51, 52, 53) .......................................................... 19

    G. "Perimeter Cells" (Claim: 19) ................................................................... 20

    H. "Interior Cells" (Claims: 19) .................................................................... 21

    I. "Connected To" (Claims: 19, 33) ............................................................... 22

      i. The '098 Patent includes an explicit definition for "connected." ..................... 22

      ii. "Connected to" requires two components when read in light of the specification
          and claims of the '098 Patent. ............................................................... 23

      iii. Extrinsic evidence supports Big D's construction. ..................................... 24

CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Am. Piledriving Equip., Inc. v. J & G Sales, Inc.*,
    No. CIVA H-08-1253, 2010 WL 890256 (S.D. Tex. Mar. 9, 2010) ............................25

*Apex Inc. v. Raritan Computer, Inc.*,
    325 F.3d 1364, 66 U.S.P.Q.2d 1444 (Fed. Cir. 2003) ....................................................6

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*,
    262 F.3d 1258, 59 U.S.P.Q.2d 1865 (Fed. Cir. 2001) ..................................................14

*Biogen, Inc. v. Berlex Lab'ys, Inc.*,
    318 F.3d 1132 (Fed. Cir. 2003) ......................................................................................7

CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG,
    224 F.3d 1308 (Fed. Cir. 2000) ....................................................................................24

*Cordis Corp. v. Medtronic Ave, Inc.*,
    511 F.3d 1157, 85 U.S.P.Q.2d 1427 (Fed. Cir. 2008) ..................................................12

Curtiss-Wright Flow Control Corp. v. Velan, Inc.,
    438 F.3d 1374, 77 U.S.P.Q.2d 1988 (Fed. Cir. 2006) ....................................................7

*Dow Chemical Co. v. Nova Chemicals Corp.*,
    803 F.3d 620 (Fed. Cir. 2015) ........................................................................................8

*Frac Shack Inc. v. Fuel Automation Station, LLC*,
    300 F. Supp. 3d 1333 (D. Colo. 2018).........................................................................15

*Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*,
    349 F.3d 1373, 68 U.S.P.Q.2d 1865 (Fed. Cir. 2003) ..................................................14

Helmsderfer v. Bobrick Washroom Equip., Inc.,
    527 F.3d 1379 (Fed. Cir. 2008) ....................................................................................24

*In re Morris*,
    127 F.3d 1048 (Fed. Cir. 1997) ................................................................. 8

*Markman v. Westview Instruments Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) .................................................................... 6

*Marrin v. Griffin*,
    599 F.3d 1290 (Fed. Cir. 2010) ............................................................... 10

*Millipore Corp. v. W.L. Gore & Assocs., Inc.*,
    750 F. Supp. 2d 253 (D. Mass. 2010) ...................................................... 25

*Musgrave*,
    431 F.2d 882, 167 USPQ 280 (CCPA 1970) ............................................. 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898, 110 USPQ2d 1688 (2014) .................................................. 8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) .......................................................... 11, 13

*Omega Engineering, Inc. v. Raytek Corp.*,
    334 F.3d  (Fed. Cir. 2003) ...................................................................... 12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc* .........................................passim

*Pi-Net Int'l Inc. v. JPMorgan Chase & Co.*,
    No. CV 12-282-SLR, 2014 WL 1997039 (D. Del. May 14, 2014) ............... 8

*Power-One, Inc. v. Artesyn Techs., Inc.*,
    599 F.3d 1343, 94 USPQ2d 1241 (Fed. Cir. 2010) .................................... 8

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    659 F.3d 1369 (Fed. Cir. 2011) ................................................................ 6

*Rowe v. Dror*,
    112 F.3d 473 (Fed. Cir. 1997) ................................................................ 10

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*
    789 F.3d 1335 (Fed. Cir. 2015) ................................................................ 9

*Thorner v. Sony Computer Entertainment America LLC*,
   669 F.3d 1362, 101 U.S.P.Q.2d 1457 (Fed. Cir. 2012) .................................................. 22

*Toro Co. v. White Consol. Indus., Inc.*,
   199 F.3d 1295 (Fed.Cir.1999) .................................................................................. 11

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   375 F.3d 1341 (Fed. Cir. 2004) ................................................................................ 11

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576, 39 U.S.P.Q.2d 1573 (Fed. Cir. 1996) .............................................. 6, 7

## Statutes

35 U.S.C. § 103 .............................................................................................................. 3, 4, 5
35 U.S.C. § 112 .................................................................................................................... 7
35 U.S.C. § 112(a) ............................................................................................................... 7

## Other Authorities

M.P.E.P. § 2173.05(b)(IV) ................................................................................................... 8
U.S. Pat. App. No. 63/075,827 ............................................................................................ 3
U.S. Pat. App. No. 16/175,379 ............................................................................................ 3
U.S. Pat. App. No. 16/666,802 ............................................................................................ 3
U.S. Pat. App. No. 17/643,791 ............................................................................................ 3
U.S. Pat. No. 4,671,976) ("Vidal") ...................................................................................... 5
U.S. Pat. No. 927,026) ("Clayton") ..................................................................................... 4
U.S. Pat. Pub. 2014/0157501) ("D'Amico") ....................................................................... 3
U.S. Pat. Pub. 2014/0259344) ("Muderlak") ...................................................................... 3

Plaintiff Big D Industries, Inc. ("Big D") submits its responsive claim construction brief in support of its proposed constructions of claim terms in claims 19–22, 25, 27–28, 33–35, 37, 38–39, 41–45, and 51–53 of U.S. Patent No. 10,145,098 ("the '098 Patent").[1]

## INTRODUCTION

Big D asks the Court to adopt its proposed constructions included in the parties' Joint Claim Construction and Prehearing Statement [Dkt. Nos. 23 and 23-1]. Big D's proposed constructions are guided by the intrinsic evidence and consistent with the claims of the '098 Patent. Patent Owner Fresh Products, Inc. ("Fresh"), on the other hand, predominantly insists the disputed claim terms of the '098 Patent either need not be construed or should be defined using alternative ambiguous terminology. To do so, Fresh implicitly asks the Court to disregard the text of '098 Patent, including definitions provided in the specification.

## BACKGROUND

### I. THE '098 PATENT

#### A. Brief Overview of the '098 Patent

The '098 Patent is directed to a urinal screen, as shown:

---

[1] A true and correct copy of the '098 Patent is included as Exhibit 1. Cites to the '098 Patent will be in form "[Column:line number(s)]."



FIG. 2

The urinal screen is sized and shaped for a urinal, toilet, other bathroom appliance, or other environment in which the urinal screen may be installed. ['098 Patent, 3:67–4:11 (FRESHPR_BIGD0000089)]. The urinal screen includes a frame with first and second faces and a plurality of openings extending through the thickness of the frame and forming a tessellation. [*Id.* at 4:4-9 (FRESHPR_BIGD0000089); FIG. 2].

The screen includes first and second posts extending from the first and second faces respectively. [*Id.* at 1:26-33(FRESHPR_BIGD0000088)].



FIG. 5

When the urinal screen is placed on a surface, the screen is positioned away from that surface by the length of the posts. The first and second posts either "connect to" (claim 19) or "extend from" (claim 38) braces or corners (portions of the frame forming a

Page 2

"perimeter" defining each of the openings) that can be shared between two or more openings, as shown below:



FIG. 4

**B.      Prosecution History of the '098 Patent[2]**

The application that issued as the '098 Patent was filed October 28, 2015, and published May 5, 2016.[3] On December 19, 2016, the Examiner issued a non-final Office action rejecting all the originally-filed claims, 1–19. Specifically, claims 17–19 were rejected under 35 U.S.C. § 103 as being unpatentable over Muderlak *et al.* (U.S. Pat. Pub. 2014/0259344) ("Muderlak") in view of D'Amico (U.S. Pat. Pub. 2014/0157501) ("D'Amico"). Claim 17 originally included a limitation, "the screen includes a plurality of interconnected cells…" The Examiner stated that Muderlak failed to show interconnected

---

[2] A true and correct copy of the prosecution history of the '098 Patent ("098 Patent PH") is attached hereto as Ex. 2.

[3] The '098 Patent claims priority to U.S. provisional patent application No. 63/075,827, filed Nov. 5, 2014, and three "child" applications, U.S. Pat. App. No. 16/175,379 filed October 30, 2018, U.S. Pat. App. No. 16/666,802 filed October 29, 2019, and U.S. Pat. App. No. 17/643,791 filed December 10, 2021, claim priority to the '098 Patent.

cells but that D'Amico included a "plurality of interconnected cells." ['098 Patent PH, FRESHPR_BIGD0000142]. In response, on March 17, 2017, Fresh argued that D'Amico disclosed non-uniformly-shaped voids instead of interconnected cells. [*Id.* at FRESHPR_BIGD0000156]. Fresh also amended claim 17 to include a limitation requiring "a majority of the cells [to] have identical shapes." [*Id.* at FRESHPR_BIGD0000153]. On June 27, 2017, the Examiner issued a second non-final Office action rejecting claims 1–19 again. Claims 17–19 were rejected under 35 U.S.C. § 103 as being unpatentable over Muderlak in view of Clayton (U.S. Pat. No. 927,026) ("Clayton"). [*Id.* at FRESHPR_BIGD0000272]. The Examiner stated that Muderlak fails to show interconnected cells but that Clayon did. *Id.*

In response on September 27, 2017, Fresh, in relevant part, argued: (1) the combination of Muderlak and Clayton is improper because Clayton is not analogous art to Muderlak or its application, and there is no motivation to combine Clayton and Muderlak; and (2) modifying Muderlak to comprise interconnected cells relies on improper hindsight. [*Id.* at FRESHPR_BIGD0000290]. Specifically, Fresh argued that Clayton is not analogous art because Muderlak discloses urinal screens and Clayton discusses "sanitary flooring." [*Id.* at FRESHPR_BIGD0000291]. Fresh further argued that Clayton was not pertinent to the problems faced by its application or Muderlak, despite that a purpose of Clayton is "to secure a thoroughly sanitary floor surface for toilet rooms." [*Id.* at FRESHPR_BIGD0000294]. Finally, Fresh argued that modifying Muderlak to include interconnected cells relies on hindsight because "modifying the screens of Muderlak to

include the claimed interconnected cells would destroy the strip-slit construction of the Muderlak flexible screens." [*Id.* at FRESHPR_BIGD0000296]. Fresh did not amend then-numbered claims 17–19 but added new claims 20–27.

On January 5, 2018, the Examiner issued a final Office action rejecting claims 1 and 11–23 as being unpatentable over Muderlak in view of Clayton, claims 2–10 and 23–28 as being unpatentable over Muderlak in view of Clayton and further view of Vidal (U.S. Pat. No. 4,671,976) ("Vidal"). [*Id.* at FRESHPR_BIGD0000306]. The Examiner rejected each of Fresh's arguments. [*Id.* at FRESHPR_BIGD0000311–0000313].

On May 10, 2018, the Examiner and Fresh's representative met in-person to discuss the pending claims and the prior art cited. [*Id.* at FRESHPR_BIGD0000370]. Among other things, they agreed that (1) Clayton discloses a floor, not a urinal screen and (2) a urinal screen as claimed in new claim 42 including "a number of posts surround the opening and the posts reduce splashing" would define over the prior art. *Id.* On May 23, 2018, Fresh amended Claim 17 in part to clarify that the pluralities of first and second posts "each connected to a brace or corner of the frame." [*Id.* at FRESHPR_BIGD0000375].

Following a telephonic interview on August 2, 2018, the Examiner, with Fresh's permission, amended claims 13 and 42 (issued claims 1 and 38 of the '098 Patent, respectively) to clarify the urinal screen must be set upon a surface "in a urinal." ['098 Patent PH, FRESHPR_BIGD0000393]. On November 14, 2018, the Examiner entered an Issue Notification for the '098 Patent.

## ARGUMENT AND AUTHORITIES

### I.    LEGAL STANDARDS OF CLAIM CONSTRUCTION

Claim construction is a matter of law for the Court. *Markman v. Westview Instruments Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370 (1996). "It is the single most important event in the course of a patent litigation. It defines the scope of property rights being enforced and is often the difference between infringement and non-infringement, or validity and invalidity." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 659 F.3d 1369, 1370 (Fed. Cir. 2011) (Moore, J., dissenting). *Markman* requires the court to determine the meaning and scope of any disputed terms and limiting expression in the claims. The "words of a patent claim" are analyzed from the perspective of a "person of ordinary skill in the art in question" on the "effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). Fresh does not dispute this basic premise [Dkt. No. 25, p. 7].

The primary tools for this analysis are the plain words of the claims themselves, the patent specification, and the prosecution history of the patent. *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371, 66 U.S.P.Q.2d 1444 (Fed. Cir. 2003); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 U.S.P.Q.2d 1573 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 U.S.P.Q.2d 1321 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577, 38 U.S.P.Q.2d 1461 (1996). The Federal Circuit has cautioned against placing too much emphasis on the "ordinary meaning" of a term "without adequate grounding of that term within the context of the

specification" of the patent. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1378, 77 U.S.P.Q.2d 1988 (Fed. Cir. 2006). It reasoned that determining the "ordinary meaning" of claim terms prior to consulting the specification excessively limits the specification's role. *Phillips*, 415 F.3d at 1320–21.

Moreover, the specification can act as the patent's own dictionary when a claim term is either expressly or implicitly defined in that specification. *See Vitronics*, 90 F.3d at 1582. Usually this is the single-best, dispositive guide to the meaning of the claim term. *Id.* The importance of the specification in claim construction derives from the statutory requirements that it describe the claimed invention in "full, clear, concise, and exact terms." 35 U.S.C. § 112(a); *Phillips*, 415 F.3d at 1316. Thus, any ambiguity between the specification and the prosecution history must be resolved in favor of the specification and claims. *Biogen, Inc. v. Berlex Lab'ys, Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003).

Extrinsic evidence, including dictionaries and learned treatises, may be used by the court. *Phillips*, 415 F.3d at 1316. Extrinsic evidence, though, is "less significant than the intrinsic evidence in determining the legally operative meaning of claim language." *Id*. Dictionaries and treatises may be used if the court deems them helpful in determining the true meaning of the claim language, but courts are cautioned against elevating the dictionary to the level of intrinsic evidence because it focuses the inquiry on the abstract meaning of words instead of claim terms in the context of the patent. *Id.* at 1321.

Alternatively, the Court may decide that a claim term is indefinite. A decision on whether a claim is indefinite under 35 U.S.C. § 112 requires a determination of whether

those skilled in the art would understand what is claimed when the claim is read in light of the specification. *Power-One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343, 1350, 94 USPQ2d 1241, 1245 (Fed. Cir. 2010). Patented claims are not given the broadest reasonable interpretation during court proceedings involving infringement and validity, and can be interpreted based on a fully developed prosecution record. *In re Morris*, 127 F.3d 1048, 1053 (Fed. Cir. 1997). While "absolute precision is unattainable," the definiteness requirement "mandates clarity." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 110 USPQ2d 1688, 1693 (2014).

When a subjective term is used in a claim, the examiner should determine whether the specification supplies some standard for measuring the scope of the term, similar to the analysis for a term of degree. M.P.E.P. § 2173.05(b)(IV). Some objective standard must be provided in order to allow the public to determine the scope of the claim. *Id*. A claim that requires the exercise of subjective judgment without restriction may render the claim indefinite. *In re Musgrave,* 431 F.2d 882, 893, 167 USPQ 280, 289 (CCPA 1970). Similarly, when a claim term "is described in several different ways in the patent specification" and "[t]he specification offers overlapping and competing definitions," that claim term is indefinite. *Pi-Net Int'l Inc. v. JPMorgan Chase & Co.*, No. CV 12-282-SLR, 2014 WL 1997039, at *3 (D. Del. May 14, 2014). For example, in *Dow Chemical Co. v. Nova Chemicals Corp.*, the term "slope of strain hardening" was indefinite because at least four methods existed to determine the slope, and the specification failed to offer guidance as to which applied. 803 F.3d 620, 634 (Fed. Cir. 2015). Similarly, in *Teva*

*Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, the term "molecular weight" was indefinite because there were three possible measures of molecular weight, and it was unclear as to which method the patent called. 789 F.3d 1335, 1344–45 (Fed. Cir. 2015).

## II.    DISPUTED CLAIM TERMS

Big D asks the Court to construe the following ten terms in accordance with the evidence provided. Fresh's general position seems to be that no claim construction is necessary. However, when it proposes constructions of disputed terms, those constructions are the product of heavy reliance on extrinsic evidence devoid of any meaningful review of the text or history of the '098 Patent. Fresh's constructions also use terminology that does not assist the Court to better define the claim terms. Big D alternatively submits that several of the disputed claim terms are indefinite and/or that Fresh's proposed constructions of those terms would render the asserted claims indefinite, and asks the Court to find those claims indefinite if it chooses not to adopt Big D's proposed constructions.

### A.  "Urinal Screen" (Claims: 19–22, 25, 27–28, 33–35, 37–39, 41–45, 51–53)[4]

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| Non-limiting as a preamble. Otherwise, a screen for a vessel or fixture for receiving urine. | Plain and ordinary meaning. |

---

[4] Big D notes that Fresh's Opening Brief combined constructions for the terms "urinal" and "urinal screen." Big D believes combining the terms to be improper because "urinal" is employed differently throughout the '098 Patent when used by itself rather than when combined with the term "screen." For example, the '098 Patent specifically states when a "urinal screen" is intended to be positioned in a "urinal" as opposed to a different environment for receiving urine. [see claims 1 & 22].

Big D first proposes that the preambles of claims 19 and 38 (i.e., "[a] urinal screen") should not be construed in a way that limits the scope of those claims. *See Marrin v. Griffin*, 599 F.3d 1290, 1294 (Fed. Cir. 2010) (internal citations omitted) ("preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim. For apparatus claims … generally patentability depends on the claimed structure, not on the purpose of that structure."); *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) ("where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation."). The preambles to claims 19 and 38 include no such structural limitations, only the claimed structure's intended use as a "urinal screen." Thus, the preambles to claims 19 and 38 should not be considered limitations and are of no significance to claim construction.

Alternatively, Big D's proposed construction for the term "urinal screen" is supported by the '098 Patent. "Urinal screen" is implicitly defined within the '098 Patent specification to mean "a screen for a vessel or fixture for receiving urine." The specification states, "[t]he urinal screen 10 can be sized and shaped to fit into a urinal, toilet, or other bathroom appliance." ['098 Patent, 3:66–4:8 (FRESHPR_BIGD0000089)]. Similarly, "[t]he contoured surfaces of the sides 42 and corners 46 can deflect fluid (e.g., urine) to reduce splash in the urinal, toilet, or other environment in which the urinal screen 10 is installed." [*Id.* at 5:6–9 (FRESHPR_BIGD0000090)]. The specification is clear. The urinal screen is designed for urinals, toilets, and other bathroom appliances, or for other

environments in which the urinal screen is installed—all "vessels or fixtures for receiving urine." Thus, a "urinal screen" is "a screen for a vessel or fixture for receiving urine."

Fresh suggests that no formal construction is necessary because "urinal screen" is a common term that would be readily understood by a jury. That is not the proper standard for construing claim terms, unless the Court seats a jury of all persons of ordinary skill in the art ("POSITA") at the effective date of filing of the patent-in-suit. *See Phillips,* 415 F.3d at 1315. Moreover, courts routinely construe "ordinary words" when the "'ordinary' meaning of a term does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); *see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1350 (Fed. Cir. 2004) (construing "golden brown" even though colors "are commonly used terms with well-accepted plain definitions that rarely need construction"), *rev'd on other grounds*, 546 U.S. 394, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006); *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed.Cir.1999) (construing "cover," "included," "attachment," and "removable" with respect to patents directed to leaf blowers/vacuums).

Fresh argues that it disclaimed toilets and other vessels/fixtures when it "distinguished" its purported invention from Clayton. However, Fresh and the Examiner merely agreed that "Clayton discloses a floor, not a urinal screen." ['098 Patent PH, FRESHPR_BIGD0000370]. But, in the same Office action response, Fresh stated "reviewers of this… ***shall not reasonably infer that Applicant has made any disclaimers or disavowals*** of any subject matter supported by the present application" (emphasis

added). Further, as Fresh cited, disavowals must be "unequivocal," and it can point to no such kind of statement—only to a statement indicating that it has **not** done so. *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1324 (Fed. Cir. 2003).; *see also Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 85 U.S.P.Q.2d 1427, 1441 (Fed. Cir. 2008) (argument-based disavowals will be found only if they constitute "clear and unmistakable" surrenders of subject matter). Fresh's disclaimer argument makes even less sense when considering that the Examiner later amended (with Fresh's permission) the claims to clarify their limited use "in a urinal." ['098 Patent PH, FRESHPR_BIGD0000393].

Therefore, Fresh could not have disclaimed toilets and other vessels or fixtures for receiving urine from its purported invention. Even if Fresh was trying to disclaim toilets and other fixtures or vessels in its response, the Examiner's purported conclusion on the matter is merely a small portion of the intrinsic record, and the specification of the '098 Patent is clear. The Court therefore should adopt Big D's proposed construction, "a screen for a vessel or fixture for receiving urine." It is the meaning of "urinal screen" a POSITA would have understood in November 2014 in view of the claim language and specifications.

### B. "Urinal" (Claims: 22, 39)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| A vessel or fixture for receiving urine. | Plain and ordinary meaning. |

The term "urinal" is not defined in the '098 Patent or its prosecution history. Big D asks the Court not to leave the parties with a "plain and ordinary meaning" construction

because there is no intrinsic evidence to help define it. Such a construction also would not help resolve the parties' dispute because a POSITA would not have understood the term's scope. *O2 Micro*, 521 F.3d at 1361. Specifically, a POSITA would not have understood whether any given toilet or other environment designed to receive urine was a "urinal." If anything, a POSITA would have only concluded that a "urinal" is "a vessel or fixture for receiving urine." The Court, looking extrinsically, would find support for this construction. Merriam-Webster defines "urinal" consistent with Big D's proposal, i.e., "a vessel for receiving urine." Ex. 3, definition of "urinal," *Merriam-Webster.com Dictionary*, Merriam-Webster, 2 Feb. 2022. Therefore, the Court should construe "urinal" to mean "a vessel or fixture for receiving urine."

### C. "Plurality of Interconnected Cells" (Claims: 19, 20, 27, 28, 34)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| At least two distinct openings or solid areas joined with one another by the frame. Otherwise, indefinite. | At least two distinct openings or solid areas having shared sides. |

Big D's proposed construction of "plurality of interconnected cells" is supported by the intrinsic evidence of the '098 Patent. Fresh is correct regarding the parties' agreement that a plurality of cells is at least two distinct openings or solid areas of the urinal screen. ['098 Patent, 4:4-5; 4:63-5:3; 5:10-15 (FRESHPR_BIGD0000089-0000090)]. However, Big D additionally argues that a POSITA would have understood that the plurality of cells ("openings" or "solid areas") are interconnected ("joined with one another") **by the frame**, especially in light of the specification's clarity on the matter:

*"The frame 14 can define a plurality of openings 18 through a thickness of the frame 14."* ['098 Patent, 4:4-5 (FRESHPR_BIGD0000089)].

*"All or a portion of the frame 14 forms a tessellation of openings 18..."* ['098 Patent, 4:65-66 (FRESHPR_BIGD0000089)].

*"[P]ortions of the frame 14 include one or more solid or closed portions between or surrounding the openings 18."* ['098 Patent, 5:11-12 (FRESHPR_BIGD0000090)].

*"[T]he frame 14 can include one or more solid cells 19 positioned between and/or adjacent the openings 18 of the frame 14."* ['098 Patent, 5:13-15 (FRESHPR_BIGD0000090)]

Big D's proposed construction uses the description of the openings in the specification, and it is entirely appropriate for the Court to rely heavily on this description when construing the claims. *Phillips*, 415 F.3d at 1317; *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1271, 59 U.S.P.Q.2d 1865 (Fed. Cir. 2001) ("when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'").

Despite all intrinsic evidence being to the contrary, Fresh insists the cells are defined by "having shared sides." This construction would only make the term indefinite, and the Court should reject it for that reason. *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384, 68 U.S.P.Q.2d 1865 (Fed. Cir. 2003) (rejecting proposed construction of the term "synergistically effective amount" where that construction would render the claim indefinite). For example, Fresh's proposed construction does not explain what "shared sides" encompass. Instead, Fresh attempts to rely on the prosecution history

to support its construction, specifically where the Examiner stated that Muderlak (one of the figures from which is reproduced below) does not show interconnected cells:



FIG. 4

Notably, the Examiner did not provide any reason as to how she came to that conclusion.[5] She did not provide any insight into the meaning of "shared sides," as the term cannot be found within the prosecution history, specification, or claims of the '098 Patent. Thus, the Examiner's conclusion is not helpful in defining "plurality of interconnected cells." *Frac Shack Inc. v. Fuel Automation Station, LLC*, 300 F. Supp. 3d 1333, 1338–39 (D. Colo. 2018) (citing *Phillips*, 415 F. 3d at 1317) ("the prosecution history 'often lacks the clarity of the specification and thus is less useful for claim construction purposes.'").

In light of the foregoing, the Court should adopt Big D's construction of "plurality of interconnected cells," and construe the term to mean "at least two distinct openings or solid areas joined with one another by the frame."

---

[5] Muderlak appears to show "interconnected cells" whether the Court chooses Big D's, Fresh's, or some other construction for this term. Muderlak shows two distinct openings joined together by the frame. It also shows two distinct openings having shared sides.

Page 15

### D.     "Brace" (Claims: 19, 33, 37, 51, 52)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| A portion of the frame joining two distinct openings or solid areas and defining a portion of each of the two distinct openings or solid areas. Otherwise, indefinite. | A rod or strut. |

Big D proposes a construction for "brace" based on the text of the '098 Patent, including its specification and claims. Specifically, the '098 Patent states "one or more openings 18 (e.g., cells) can have a perimeter which includes a plurality of sides (e.g., braces) 42 and corners 46." ['098 Patent, 4:63-65 (FRESHPR_BIGD0000089)]. Further, claim 19 reads "a plurality of interconnected cells at least partially defined by a plurality of braces that intersect at corners…" Big D's proposed construction is formed directly from this text and further supported by the drawings of the '098 Patent. [See '098 Patent at FIGS. 2, 3, and 5 (FRESHPR_BIGD0000083-0000086)]. In fact, reading Big D's constructions of "plurality of interconnected cells" and "brace" together into claim 19 provides an intelligible construction without changing the claim's scope: the interconnected cells (distinct openings or solid areas) are defined by portions of the frame, and those portions of the frame at least partially defining the cells are called "braces," which intersect at corners. A POSITA would have understood this when reading claim 19.

On the other hand, Fresh unnecessarily relies on extrinsic evidence and proposes a construction (i.e., "a rod or strut") that would have only confused a POSITA and makes "brace" indefinite. For example, Fresh supplies no further meaning to "a rod or strut," or

any indication as to which part of the specification or prosecution history of the '098 Patent supports this proposed construction. All Fresh offers is that the "rods or struts" are apparently not load-bearing. Thus, Fresh asks the Court to construe "brace" to mean a non-load-bearing "rod or strut." What that includes is not clear. Rods and struts are generally load bearing structures. For example, the dictionary definition of "strut" is "a structural piece designed to resist pressure in the direction of its length." Ex. 4, definition of "strut," *Merriam-Webster.com Dictionary*, Merriam-Webster, 3 Feb. 2022.   So, with Fresh's proposed construction, the use of a dictionary definition here is unreliable for clarifying the meaning of "brace" in light of the intrinsic evidence. Therefore, the Court should not adopt Fresh's construction because it is not supported by the intrinsic record and makes "brace" indefinite.

Should the Court choose not to adopt Big D's construction, Big D proposes that the term "brace" is indefinite on its face because a POSITA would not have been able to understand its scope. A "brace" is only defined by its relationship to the "plurality of interconnected cells." The '098 Patent states "the openings 18 (e.g., cells) can have a perimeter which includes a plurality of sides (e.g., braces) 42 and corners 46." ['098 Patent, at 4:63–65 (FRESHPR_BIGD0000089)]. However, the '098 Patent does not clarify what constitutes a "side (e.g., brace)." Fresh seems to believe that only a relatively thin portion of the frame can be a "brace." Such an interpretation is clearly subjective—making the term indefinite. If the braces and corners form the perimeter of the interconnected cells, what are the approximate dimensions of a "brace"? At what width or thickness does a brace

stop being a brace? Analyzing the Muderlak reference specifically, did Fresh and the Examiner believe that it did not have interconnected cells because of the width of the "braces" between the openings?



FIG. 4

If the openings of Muderlak became larger thereby shrinking the portion of the frame between the openings, would it have "braces" and "interconnected cells" according to Fresh? Unless the Court chooses to construe a "brace" to be the "portion of the frame joining two distinct openings or solid areas and defining a portion of each of the two distinct openings or solid areas," it would be indeterminable to a POSITA whether a part of the frame is a "brace" or just a part of the frame between two openings. Instead, the Court should adopt Big D's construction drawn from the specification (and supporting drawings) of the '098 Patent.

E.    "Corner" (Claims: 19, 33, 37, 51, 52)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| Big D supports a construction of "an | Plain and ordinary meaning. If further |

| | |
|---|---|
| intersection of [braces]," subject to the Court's construction of "brace." | defined, an intersection of braces. |

The '098 patent intrinsically supports construing "corner" to mean "an intersection of braces." Thus, Big D supports such a construction so long as it logically comports with the construction of "braces." Specifically, claim 19 reads "a plurality of interconnected cells at least partially defined by a plurality of braces that intersect at corners…" Given this claim language establishing the relationship between "braces" and "corners," the meaning of the term "corner" is somewhat dependent on the meaning of "brace." Therefore, dependent on the Court's construction of "brace," Big D proposes a construction of "an intersection of braces."

### F.    "Perimeter" (Claims: 38, 51, 52, 53)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| The portion of the frame forming the boundary of an opening extending through the frame. | Plain and ordinary meaning. If further defined, the boundary, e.g. of an opening or the urinal screen. |

Big D's proposed construction of "perimeter" is supported by the specification, the claim language, and the prosecution history of the '098 Patent.

The parties seem to be in agreement as to the meaning of the term "perimeter" when the term is used to describe a structure, such as the outer boundary of the frame or the outer boundary of an opening extending through the frame. The dispute is about use of the term "perimeter" as an adjective to modify the term "cells" (see below). The term "perimeter" when used as a noun in claim 19 and claim 38 refers only to the outer boundary of a cell

Page 19

or opening. The term "perimeter structure" is also used throughout the specification and claims of the '098 Patent to refer to a structure defining a cell or opening.

When the term "perimeter" is used in claims 38, 51, 52, and 53 as a noun in reference to openings, Big D asks the Court to construe the term "perimeter" to mean "the portion of the frame forming the boundary of an opening extending through the frame."

### G. "Perimeter Cells" (Claim: 19)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| The outermost distinct openings or solid areas of the frame. Otherwise, indefinite. | Plain and ordinary meaning. If further defined, the cells located at the perimeter of the urinal screen. |

The claim term "perimeter cells" appears only in claim 19, which states in part, "the plurality of interconnected cells comprising at least a plurality of **perimeter cells** and a plurality of interior cells." The term "perimeter cells" appears nowhere in the specification of the '098 Patent.

Big D asks the Court to adopt its construction to clarify which cells are considered "perimeter cells." Big D considers "perimeter cells" to be the "outermost distinct cells." Big D's construction is the only construction that will evade indefiniteness.

Fresh's proposed construction (i.e., "the cells located at the perimeter of the urinal screen") would render the asserted claims indefinite because, applying that construction, POSITA's opinions could differ on which cells are considered "perimeter cells" and which are considered "interior cells." Under Fresh's construction, the "perimeter cells" are required to be "located at" the outer boundary of the frame. That begs the questions—what

distance from the outer boundary of the frame must the cells be located to be considered "located at" the perimeter, and conversely, what distance from the outer boundary of the frame does a cell stop being considered "located at" the perimeter?

Thus, Fresh's proposal of "cells located at the perimeter" leaves "perimeter cells" open to further interpretation, particularly considering Fresh's proposed construction of "perimeter." Construing "perimeter cells" to mean only "the outermost cells," as Big D proposes, does not. Therefore, the Court should adopt Big D's construction.

Alternatively, but for similar reasons, Big D proposes that the term "perimeter cells" is indefinite. The cells are openings in the frame. The cells are defined by a structure, but they are void areas. As discussed above, the term "perimeter" is used throughout the specification and the claims of the '098 Patent to define a structure that defines either the outer boundary of the frame or the outer boundary of a cell. In claim 19, the term "perimeter" is now used to modify a cell (i.e., a void space). A POSITA would not have understood this use of "perimeter" in light of its prior uses.

Therefore, Big D asks the Court to adopt its construction or hold that the term "perimeter cells" is indefinite.

### H.    "Interior Cells" (Claims: 19)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| The distinct openings or solid areas of the frame interior to the "perimeter cells." Otherwise, indefinite. | Plain and ordinary meaning. If further defined, the cells located interior of the perimeter cells. |

The term "interior cells" similarly does not appear in the specification of the '098 Patent. Claim 19 (the sole claim of the '098 Patent in which that term appears) provides no explanation or definition of the relationship between interior and perimeter cells. However, Big D and Fresh agree that "interior cells" would necessarily be those cells interior to the "perimeter cells." Big D asks the Court to construe the term to reflect that relationship. The term must also be construed so that the parties may use its construction to determine when a cell is "interior," because the plain and ordinary meaning would not do so. Thus, the Court should adopt Big D's construction and define "interior cells" as "the distinct openings or solid areas of the frame interior to the 'perimeter cells.'"

I.    "Connected To" (Claims: 19, 33)

| Big D's Proposed Construction | Fresh's Proposed Construction |
|---|---|
| Two discrete elements joined or linked together. | Plain and ordinary meaning. |

Big D proposes that "connected to" in the context of the '098 Patent requires a connection of two discrete elements. Fresh argues that "connected to" can include the continuous formation of different parts of a "unitary" body. The Court should adopt Big D's construction of "connected to" for the following reasons.

i.    The '098 Patent includes an explicit definition for "connected."

When a patentee has defined a term, the Court should use the definition provided. *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365, 101 U.S.P.Q.2d 1457 (Fed. Cir. 2012) (stating the appropriateness of departing from the plain

and ordinary meaning of a claim term where a patentee sets out a definition and acts as its own lexicographer). In its opening brief, Fresh fails to address the following explicit definition of "connected" provided in the specification of the '098 Patent:

> "As used herein, the terms "attached," "**connected**," "mated," and other such relational terms **should be construed**, unless otherwise noted, **to include removable, moveable, fixed, adjustable, and/or releasable connections or attachments.** The connections/attachments can include direct connections and/or connections having intermediate structure **between the two components discussed**."

['098 Patent, at 7:30-36 (FRESHPR_BIGD0000091)] (emphasis added). Given this definition, the Court's construction of "connected to" should include the requirement that the components that are "connected to" one another are discrete components in contrast to being of one-piece construction.

### ii. "Connected to" requires two components when read in light of the specification and claims of the '098 Patent.

A POSITA would have understood that "connected to" requires a joining or linking of two discrete elements when reading the specification and the claims of the '098 Patent.

For the most part, the specification of the '098 Patent describes the posts as "extending from" the frame. For example, "[i]n some embodiments, the urinal screen **10** includes a plurality of posts or structural supports **22 extending from** one or more surfaces of the frame 14" ['098 Patent, at 4:6-8 (FRESHPR_BIGD0000089)].; "and forming posts 22 **extending from** the frame 14" [*Id*. at 4:33-34 (FRESHPR_BIGD0000089)]**;** "In some embodiments, the posts 22 **extend from** the corners 46 of the frame forming openings 18." [*Id*. at 5:33-34 (FRESHPR_BIGD0000090)]. The same is true for most of the claims of the

'098 patent. Claims 1-18 recite the posts as "extending from" the frame. Likewise, claims 38-55 of the '098 Patent recite the posts as **extending from** the frame.

The exception is the inclusion in the specification of the explicit definition of "connected" and the use of the term "connected to" in claim 19 to describe the relationship of the posts to the frame. More specifically, claim 19 states that the urinal screen comprises "pluralities of first and second posts **connected to** a brace or corner of frame." [*Id.* at 9:58–63 (FRESHPR_BIGD0000092)]. Given this language, "connected to" cannot have the same meaning as "extending from," where "extending from" requires no connection be made between two components in accordance with the patentee's definition. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("[i]n the absence of evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings"); *see also Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (Federal Circuit precedent "instructs that different claim terms are presumed to have different meanings").

### iii.    Extrinsic evidence supports Big D's construction.

Though not necessary, an examination of extrinsic evidence confirms Big D's proposed construction, which is rooted in the intrinsic evidence. The *Merriam-Webster* definition of "connected" is "joined or linked together". Ex. 5, definition of "connected," *Merriam-Webster.com Dictionary*, Merriam-Webster, 2 Feb. 2022. This definition is consistent with the definition Fresh included in the specification of the '098 Patent. Additionally, other courts have construed "connected to" in a manner consistent with how

Big D proposes here. *Millipore Corp. v. W.L. Gore & Assocs., Inc.*, 750 F. Supp. 2d 253, 270 (D. Mass. 2010), *on reconsid. in part sub nom. EMD Millipore Corp. v. W.L. Gore & Assocs., Inc.*, No. CIV.A. 09-10765-DPW, 2012 WL 931483 (D. Mass. Mar. 20, 2012) ("joined or linked together"); *Am. Piledriving Equip., Inc. v. J & G Sales, Inc.*, No. CIVA H-08-1253, 2010 WL 890256, at *2 (S.D. Tex. Mar. 9, 2010) ("joined together, united or linked").

Fresh suggests that the Court not adopt Big D's proposed construction because it would "confuse the jury." Big D submits that whether a construction would confuse a jury is not the legal standard for claim construction. Next, Fresh gives a fanciful reading of claim 19 improperly using Big D's construction to assert that it is "grammatically nonsensical." As Fresh is likely aware, Big D's interpretation of claim 19 would simply read "... a plurality of first/second posts (first discrete element) each "***joined or linked***" to a brace or corner of the frame (second discrete element)...." Thus, "connected to" should be construed as "two discrete elements joined or linked together."

## CONCLUSION

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips,* 415 F.3d at 1313. Here, Big D's proposed constructions are informed and supported by the express language of the claims, the specification, and the prosecution history of the '098 Patent. Big D respectfully requests that the Court adopt its proposed construction for each of the disputed claim terms.

Dated: February 4, 2022                    Respectfully submitted,


                                           */s/Phillip G. Whaley*
                                           Patrick M. Ryan, OBA # 7864
                                           Phillip G. Whaley, OBA No. 13371
                                           Patrick R. Pearce, Jr., OBA No. 18802
                                           **RYAN WHALEY**
                                           400 North Walnut Avenue
                                           Oklahoma City, OK  73104
                                           Telephone:   (405) 239-6040
                                           Facsimile: (405) 239-6766
                                           E-mail: pwhaley@ryanwhaley.com

                                           -and-

                                           */s/Evan W. Talley*
                                           Evan W. Talley, OBA # 22923
                                           **DUNLAP CODDING PC**
                                           609 W. Sheridan Avenue
                                           Oklahoma City, OK  73102
                                           Telephone:   (405) 607-8600
                                           E-mail: etalley@dunlapcodding.com

                                           ***ATTORNEYS FOR PLAINTIFF,***
                                           ***BIG D INDUSTRIES, INC.***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 4, 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:


<u>/s/ *Julie A. Oseland*            </u>
Julie A. Oseland